**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **CAPITAL CREDIT INCORPORATED,** § § | |
| **Plaintiff,** § § § | **Civil Action No. 1:19-cv-00797 - LY** |
| v. § § | |
| **MAINSPRING AMERICA, INC. and AMAZON.COM SERVICES, INC.,** § § § | |
| **Defendant.** § § | |

### DEFENDANT AMAZON.COM SERVICES, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR TO TRANSFER VENUE

TO THE HONORABLE JUDGE LEE YEAKEL:

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and 28 U.S.C. §1404(a), Defendant Amazon.com Services, Inc. ("Amazon") files this Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer Venue.

### I. INTRODUCTION

Plaintiff Capital Credit Incorporated ("CCI") tries to hale Amazon, a Delaware corporation headquartered in Washington State, into court in Texas. The Court should dismiss, or in the alternative, transfer this action to the Western District of Washington for the following reasons:

*First*, the Court should dismiss the action because it lacks personal jurisdiction over Amazon. Amazon is a Washington-based company, incorporated in Delaware, and cannot be considered "at home" in Texas. Controlling law thus holds Amazon is not subject to general jurisdiction here. The Court likewise lacks specific jurisdiction because CCI's claims do not arise out of any relevant conduct by Amazon that occurred in or that it directed at Texas.

*Second*, even if the Court finds it could exercise personal jurisdiction over Amazon, it should still transfer to the Western District of Washington under 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses."  The key witnesses do not reside in the Western District of Texas.  Nearly all the relevant discovery will be conducted in Washington—where Amazon's multiple witnesses and documents are all located, where the relevant decisions at issue were made, and where the related arbitration that CCI and Defendant Mainspring America, Inc. ("Mainspring") jointly filed against Amazon is currently proceeding and set for hearing.

The Court should therefore dismiss CCI's claims against Amazon for lack of personal jurisdiction, or alternatively, transfer this action to the Western District of Washington.

## II. BACKGROUND FACTS

This dispute among all three parties to this litigation began with an arbitration proceeding jointly filed by Plaintiff CCI and (now styled as defendant) Mainspring against Amazon.  To understand the context for this lawsuit, and underscore why it does not belong in Texas, some additional background on how it began is therefore in order.

### A. CCI and Mainspring Jointly File Arbitration Against Amazon, Which Remains Pending and Set for Hearing in Seattle, Washington.

In December 2018, CCI and Mainspring joined as co-plaintiffs to file a consolidated complaint against Amazon in arbitration.  Arbitration Compl. [Dkt. 1-1].  Mainspring (a former Amazon vendor) and CCI (Mainspring's creditor) asserted joint claims and both signed their co-complaint.  *See id.*  Their claims rest on the core allegation that Mainspring and Amazon entered into a vendor contract under which Amazon purportedly owes Mainspring payment for certain products.  *Id.* ¶¶ 6-8, 19-23.  CCI's claims derive solely from its status as Mainspring's creditor, and its related security interest in Mainspring's accounts receivable.  *Id.* ¶¶ 15, 37.

In their Arbitration Complaint, CCI and Mainspring asserted the proper locale is in Orange County, California, alleging that "the events and injuries … and a substantial amount of the acts and omissions giving rise to the causes of action of this Complaint occurred in the County of Orange."  Arbitration Compl. ¶ 4.  In its Answer, Amazon objected to California locale and law because the governing vendor contract with Mainspring selects King County, Washington as the locale for in-person arbitration proceedings and provides that Washington law governs.  Goldmark Decl. Ex. A [Answer] at p. 6.  Amazon also objected to CCI and Mainspring's consolidated action because the governing contract requires arbitration "only on an individual basis and not in a class, consolidated, or representative action."  *Id.* at p. 1.  Amazon did not argue that CCI's claims were not arbitrable, but rather that the vendor contract barred CCI from consolidating its claims with Mainspring's into a joint arbitration proceeding.  *See id.*

CCI and Mainspring submitted joint responses on these preliminary issues.  Despite the contractual Washington venue provision, CCI and Mainspring maintained that California provides the proper venue.  *Id.* Ex. B [Claimants' Locale Contention].  Although it is a Texas corporation, CCI represented that "its operations, personnel and counsel are located in Silicon Valley, California," *id.* at 2:5-6, and that "[a]ll of the relevant witnesses from CCI are located in Silicon Valley, California."  *Id.* at 2:17-18.  As for consolidation, CCI and Mainspring represented that they each "have *identical* interests in this matter, which interests arise out of not just a common nucleus of operative fact, but the *exact same* nucleus of operative fact."  Claimants' Consolidation Contention [Dkt. 1-2] at 4:2-5.

The Arbitrator ruled in Amazon's favor on the preliminary issues.  Enforcing the plain terms of the vendor contract, the Arbitrator found that:  (1) Washington substantive law governs the dispute, *see* Procedural Order No. 1 [Dkt. 1-3] at p. 2 ("the applicable substantive law is the

3

law of the State of Washington"); (2) Washington provides the proper locale, *id.* at p. 3 ("the locale for this arbitration shall be King County, Washington"), and (3) without "express[ing] any view on whether CCI's claims against Amazon are arbitrable," CCI could not pursue consolidated claims with Mainspring under the contract. *Id.* at p. 3–4 (the contract "does not permit the combined assertion of claims by multiple claimants attempted here"). The Arbitrator therefore dismissed CCI from the arbitration proceeding and set the arbitration between Mainspring and Amazon for hearing on May 4-5, 2020, in Washington. *Id.* at p. 5.[1]

Rather than pursue its claims in arbitration, CCI chose to file suit, and did so in Texas (rather than Washington), naming its former co-plaintiff Mainspring as a defendant.

### B. CCI Files Suit in Texas, Where Neither Amazon Nor Mainspring Resides, and Despite its Prior Representations that the Operative Events Did Not Occur in Texas.

Defendant Amazon.com Services, Inc.[2] is a Delaware corporation with its principal place of business in Seattle, Washington. Dkt. 1-4 at ¶ 5. Mainspring is a Wyoming corporation with its principal place of business in Wyoming. *Id.* at ¶ 4. Despite neither defendant being a resident of Texas, CCI filed its Petition in Texas state court in the District Court of Travis County, which Amazon subsequently removed to this Court. *See* Dkt. 1. CCI alleged jurisdiction was proper in Travis County, Texas, asserting without any factual support—and contrary to its representations in the arbitration—that "all or a substantial part of the events or omissions giving rise to the claim occurred in Travis County" and because "Mainspring contracted in writing in [SIC] perform an obligation in Travis County." Dkt. 1-4 at ¶ 6. However, CCI does not specifically allege any conduct *by Amazon* in or directed at Texas that gave rise to the claims here. *See* Dkt. 1-4. Rather,

---

[1] Given scheduling challenges caused by the COVID-19 pandemic, the hearing was recently continued to September 15, 2020.
[2] Amazon.com Services, Inc. changed its name to Amazon.com Services LLC on December 31, 2019. Rawson Decl. at ¶ 2.

4

all of the alleged conduct by Amazon occurred in or emanated from Seattle, Washington, as the pending arbitration involving the "exact same" issues makes clear.

### C. CCI's Claims In this Case Turn on Mainspring's Pending Claims Against Amazon Proceeding in Arbitration in Washington.

CCI alleges claims against Amazon for breach of contract, fraudulent inducement, and other claims, all arising from Amazon's vendor contract and relationship with Mainspring—a Wyoming corporation. *See id.* at ¶¶ 2, 8-10. Amazon and Mainspring entered into a vendor agreement pursuant to which Amazon purchased certain products from Mainspring. *Id.* Then, according to CCI, Mainspring entered into a factoring agreement with CCI in 2017, which provided CCI with a security interest in Mainspring's inventory and accounts receivable under the vendor agreement, including its invoices to Amazon. *Id.* at ¶¶ 17-19. Amazon was not a party to that factoring agreement. *See id.*

Amazon later discovered that Mainspring was intentionally manipulating Amazon's automatic invoicing system by shipping Amazon more products than it ordered and then invoicing and collecting payment on the excess inventory shipped to Amazon. *Id.* at ¶¶ 30, 36. Accordingly, in December 2017, Amazon stopped placing orders with Mainspring and, in April 2018, Amazon froze further payments on Mainspring's invoices. *Id.* at ¶¶ 23-24. At that time, CCI alleges that Mainspring had an invoice balance of approximately $850,000 and that Amazon was holding approximately $850,000 of Mainspring's inventory. *Id.* at ¶¶ 33, 38. CCI contends that, pursuant to its security interest, CCI is entitled to payment of the amounts allegedly due to Mainspring under the vendor agreement with Amazon and to the return of any remaining Mainspring inventory supplied under that vendor agreement.

CCI's claims against Amazon in this case thus hinge on whether Mainspring is entitled to any payments or return of inventory from Amazon pursuant to the underlying vendor agreement.

As noted, that vendor contract is governed by Washington law and selects Washington as the venue for disputes. Rawson Decl. Ex. A at ¶ 10(b). Invoking that vendor agreement, Mainspring and CCI filed an arbitration proceeding against Amazon, Dkt. 1-1, and that matter (after the arbitrator dismissed CCI because the agreement prohibits consolidated actions) is currently proceeding in Washington against Amazon, with the hearing set in Seattle, Washington. Dkt. 1-3. Thus, the core issue on which CCI's entire claims rest—whether Mainspring is entitled to any payments from Amazon, i.e., accounts receivables in which CCI has a security interest—will be decided in an arbitration proceeding in Washington. Nothing about that proceeding concerns Texas.

### D. CCI Does Not Allege and Cannot Show Conduct by Amazon Directed at Texas.

Noticeably absent from CCI's petition is any allegation of any act *by Amazon* that occurred in or was directed to *Texas*. CCI does not and cannot allege that Amazon's transactions with its vendor Mainspring, located in Wyoming, targeted Texas. Rather, all of Amazon's alleged conduct occurred in or emanated from Amazon's corporate headquarters in Seattle, Washington. Rawson Decl. at ¶ 3. And, as made clear by the pending arbitration between Mainspring and Amazon, Washington provides both the chosen venue and the governing law for deciding the underlying right to payment on which CCI's claims all depend.

### III. ARGUMENT AND AUTHORITY

#### A. The Court Should Dismiss the Claims Against Amazon for Lack of Personal Jurisdiction.

A court must dismiss a claim under Federal Rule of Civil Procedure 12(b)(2) if it lacks general jurisdiction over the defendant or specific jurisdiction with respect to the claim. *Bristol-Myers Squibb Co. v. Super. Court*, 137 S. Ct. 1773, 1779 (2017); *Goodyear Dunlop Tires Ops.,*

*S.A. v. Brown*, 564 U.S. 915, 919 (2011).[3]  As plaintiff, CCI bears the burden of making a prima facie showing that personal jurisdiction is proper.  *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014).

A court may assert general jurisdiction only when the corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear*, 564 U.S. at 919).  For specific jurisdiction to exist, "the defendant's suit-related conduct must create a substantial connection with the forum State."  *Monkton*, 768 F.3d at 433 (citing *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).  The party invoking the court's jurisdiction bears the burden of establishing that a defendant has the requisite minimum contacts within the forum state to justify the court's jurisdiction." *Herman v. Cataphora, Inc.,* 730 F.3d 460, 464 (5th Cir. 2013).

Here, CCI has not established—and cannot establish—that Amazon is subject to general or specific personal jurisdiction in Texas.  The Court should therefore dismiss the claims against Amazon under Rule 12(b)(2) for lack of personal jurisdiction.

       **1.**       **The Court Lacks General Personal Jurisdiction over Amazon.**

The Court lacks general personal jurisdiction over Amazon because it is not "at home" in Texas.  *Daimler*, 571 U.S. at 122, 127; *Goodyear*, 564 U.S. at 919.  In *Goodyear* and *Daimler*, the U.S. Supreme Court explained that "the paradigm forum for the exercise of general jurisdiction"

---

[3] A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the exercise of personal jurisdiction comports with the due process clause of the Fourteenth Amendment." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd*., 818 F.3d 193, 212 (5th Cir. 2016) (citations and quotations omitted).  Because "the Texas long-arm statute extends as far as constitutional due process permits," the personal jurisdiction analysis is coextensive with the constitutional due process inquiry.  *Id.*

7

over a corporation is the place of incorporation or principal place of business, and only rarely any other place.  *Goodyear*, 564 U.S. at 924; *Daimler*, 571 U.S. at 138-39.

In *Goodyear* the Supreme Court rejected a "sprawling view of general jurisdiction," in which "any substantial manufacturer … would be amenable to suit, on any claim for relief, wherever its products are distributed." *Goodyear,* 564 U.S. at 929 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980)).  In *Daimler*, Supreme Court went further, and recognized that general jurisdiction does not exist simply because a corporation "engages in a substantial, continuous, and systematic course of business" in a state.  571 U.S. at 138-39.  The inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State.'"  *Id.*  (quoting *Goodyear*, 564 U.S. at 919).  The Supreme Court emphasized that it would require an "exceptional case" to subject a corporation to general personal jurisdiction in any location other than its principal place of business or of incorporation.  *Id.* at 139 n.19; *see also Dillard v. Fed. Corp.*, 321 F. Supp. 3d 752, 755 (W.D. Tex. 2018).  And Justice Sotomayor has opined that such cases will almost never exist.  *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1560 (2017) ("[I]t is virtually inconceivable that such corporations will ever be subject to general jurisdiction in any location other than their principal places of business or of incorporation.") (Sotomayor, J., dissenting).

Following the Supreme Court's direction and precedent, this Court has acknowledged that "for a corporation, general jurisdiction is only to be found where the corporation is incorporated, or had its principal place of business."  *Young v. Mitsubishi Motors Corp.*, 2019 WL 6327581, at *2 (W.D. Tex. Nov. 25, 2019) (citing *Daimler*, 571 U.S. at 137).

8

Here, Amazon is neither incorporated nor headquartered in Texas. Dkt. 1-4 at ¶ 5. Instead, Amazon is incorporated in Delaware. *Id.* It resides in and its business is managed from its headquarters in Seattle, Washington. Rawson Decl. at ¶ 3. Amazon cannot be considered "at home" in Texas simply because some of its subsidiaries have operations here—just as they do in every other state in this country, as well as more than 30 countries around the world. Rather, as the Supreme Court explained in rejecting general jurisdiction in *Daimler*: "A corporation [like Amazon] that operates in many places can scarcely be deemed at home in all of them." 571 U.S. at 139 n.20. "Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 139 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Because Amazon is not "at home" in Texas, this Court lacks general jurisdiction over it. *Daimler*, 571 U.S. at 137-39; *Goodyear*, 564 U.S. at 924-29.

### 2. The Court Lacks Specific Jurisdiction over Amazon.

Texas courts also lack specific jurisdiction over Amazon with respect to CCI's claims. Unlike general jurisdiction, the specific jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 284 (internal quotation marks and citations omitted). The Fifth Circuit applies a three-step test for this inquiry:

(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;

(2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and

(3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton*, 768 F.3d at 433 (citation omitted).  If the plaintiff satisfies its burden of establishing the first two prongs, the burden shifts to defendant to show the exercise of jurisdiction would be unreasonable.  *Id.*  As explained below, the Court lacks jurisdiction under this controlling test.

### a. Amazon Did Not Purposefully Direct Relevant Conduct at Texas.

The key question for specific jurisdiction is whether the defendant's "***suit-related*** conduct … create[s] a substantial connection ***with the forum State***."  *Monkton*, 768 F.3d at 433 (citation omitted) (emphasis added).  "For a finding of specific jurisdiction, the defendant must have purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities."  *Flores Lagunas v. Hernandez Holguin*, 2019 WL 2563834, at *3 (W.D. Tex. Apr. 15, 2019) (citation and quotations omitted).  The jurisdictional inquiry is limited to examining contacts that "proximately result from actions by the defendant *himself* that create a substantial connection with the forum State."  *Burger King*, 471 U.S. at 475 (emphasis in original) (quotation omitted).  Importantly, this "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *Walden*, 571 U.S. at 285 (citation omitted).

Here, CCI cannot satisfy the test for specific jurisdiction because its claims do not arise out of any activities that Amazon purposefully directed at Texas.  CCI alleges that Amazon and Mainspring, a Wyoming corporation, entered into a vendor agreement with Washington-based Amazon, pursuant to which Amazon agreed to purchase products from Mainspring.  *See* Dkt. 1-4 ¶¶ 2, 8-10.  But this contractual relationship between a Washington-based corporation and a Wyoming-based corporation has no connection to Texas.  CCI has also admitted that "the events and injuries … and a substantial amount of the acts and omissions" giving rise to its claims against Amazon "occurred in the County of Orange [in California]," not in or directed at Texas, *see*

10

Arbitration Compl. [Dkt. 1-1] ¶ 4—underscoring this forum's lack of connection to this dispute. The factoring agreement likewise does not raise any connection between Amazon and Texas, because that agreement was between CCI and Mainspring—Amazon was not a party to that agreement. *Id.* at ¶¶ 17-19. And Amazon's discovery of Mainspring's fraudulent conduct, and subsequent decision to stop further payments to Mainspring's account, also have no connection to Texas, because Amazon's conduct and decisions occurred in or emanated from Seattle, Washington. Rawson Decl. at ¶ 3.

Further, the mere fact that Mainspring chose to enter into a factoring agreement with CCI, and directed future payments to CCI cannot give rise to specific jurisdiction over Amazon. As the Supreme Court has long held: "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Thus, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285; *see also Flores Lagunas*, 2019 WL 2563834, at *3 ("unilateral activity by the Plaintiff or a third-party in the state is insufficient to establish jurisdiction"). Amazon did not choose to do any business with or make any relevant contacts with CCI in Texas—rather Mainspring did. Amazon simply made payments on Mainspring's vendor account as Mainspring directed, which happened to be a bank account for CCI. This does not constitute purposeful direction by Amazon at Texas and does not create personal jurisdiction over Amazon in Texas.

Because CCI's claims against Amazon do not arise out of any conduct by Amazon that was purposefully directed at Texas, this Court lacks specific personal jurisdiction over Amazon.

### b. The Exercise of Jurisdiction in Texas Would be Unreasonable.

Even if the Court were to conclude that CCI has carried its burden of demonstrating that its claims arise out of Amazon's actions that it purposefully directed to Texas (which they do not), the Court must assess whether exercising personal jurisdiction is reasonable. For this inquiry, courts consider: (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) plaintiff's interest in securing relief; (4) the "interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen*, 444 U.S. at 292. These factors further show that this Court should not exercise personal jurisdiction over Amazon.

The first factor—based on the availability of the evidence, witnesses, and parties—strongly favors dismissal, as virtually all of the relevant evidence in this case is located at Amazon's Seattle, Washington headquarters. The second factor also weighs against jurisdiction in Texas. Because Washington law applies to the vendor agreement between Mainspring and Amazon (and, thus, to CCI's claims against Amazon), Washington has a stronger interest in this case. *See* Rawson Decl. at Ex. A. With respect to the third factor, effective relief for CCI is undisputedly available in the Western District of Washington, and indeed an arbitration determining whether Mainspring has any right to payment from Amazon (and hence CCI's security interest in Mainspring's receivables) is currently proceeding in Washington and set for hearing in Seattle, Washington. Further, CCI has admitted, "its operations, personnel and counsel are located in Silicon Valley, California," Goldmark Ex. B at 2:5-6, which is far closer to Washington than to Texas. The fourth factor concerns whether the forum state is the most efficient place to litigate, the location of the witnesses, where the underlying wrong occurred, the governing law, and whether jurisdiction is necessary to prevent piecemeal litigation. The fifth factor concerns the impact on shared interests in social

policies. As explained in Section III.B. below, all of these efficiency considerations weigh against jurisdiction in Texas and strongly favor a Washington forum.

The applicable factors show that the exercise of personal jurisdiction over Amazon would be unreasonable here, and therefore, the Court should dismiss the claims against Amazon.

### B. In the Alternative, the Court Should Transfer this Action to the Western District of Washington Pursuant to 28 U.S.C. § 1404(a).

If the Court does not dismiss for lack of personal jurisdiction, it should transfer this action to the Western District of Washington "[f]or the convenience of parties and witnesses [and] in the interest of justice." 28 U.S.C. § 1404(a). Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted).

The preliminary question under section 1404(a) is "whether a civil action might have been brought in the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (quotation omitted). Here, as evidenced by the pending arbitration of the underlying vendor dispute against Amazon in Washington, CCI certainly could have brought this action in the Western District of Washington. Indeed, CCI originally joined as co-plaintiffs with Mainspring to file claims against Amazon in arbitration, and the arbitrator in that proceeding ruled that the proper venue for the dispute was Seattle, Washington, pursuant to the venue provision in the vendor agreement. After the arbitrator enforced that contract's prohibition on consolidated actions and dismissed CCI from the arbitration, CCI could and should have filed this action in Washington (or even in California, where it has represented the events giving rise to its claims occurred). It instead sought to forum shop and filed in Texas.

The Section 1404(a) transfer analysis thus turns to a balancing of private and public interest factors. *In re Volkswagen of Am.*, 545 F.3d at 315. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.* The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interest decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws [or in] the application of foreign law." *Id.*

Here, the private interest factors heavily favor transfer to Washington. Nearly all the witnesses, corporate representatives, and documents are located in Seattle, Washington at Amazon's headquarters, *see* Rawson Decl. ¶ 3, or nearby in Northern California, where CCI operates. CCI has represented that "its operations, personnel and counsel are located in Silicon Valley, California," Goldmark Ex. B at 2:5-6, and admitted that: "***All of the relevant witnesses from CCI are located in Silicon Valley, California***." *Id.* at 2:17-18 (emphasis added). Washington thus also provides the far more convenient forum for CCI's own witnesses in Northern California, for whom travel to Washington will be cheaper, easier, and shorter, than travelling to Texas. As for Mainspring, it is located in Wyoming—not Texas—so the relative costs and access to proof will be the same whether in Washington or Texas. Importantly, the related arbitration by Mainspring against Amazon, involving claims based on the same underlying facts and circumstances, is currently proceeding in Seattle, Washington. *See* Dkt. Nos. 1-1, 1-3. Mainspring is already availing itself of the Washington forum, and its witnesses will be traveling to Washington for the upcoming arbitration hearing there. Trial in the Western District of

14

Washington will provide better access to proof and reduce expense, for all parties. Accordingly, the private factors overwhelmingly favor transfer to the Western District of Washington.

The public interest factors also heavily favor transfer to Washington. First, the Western District of Washington is far less congested than the Western District of Texas. According to the latest Federal Court Management Statistics, the Western District of Washington has just 551 total filings per judge, compared to 1,208 per judge in the Western District of Texas. *See* Federal Court Management Statistics, September 2019 (available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0930.2019.pdf). And the median time from filing to trial in the Western District of Washington is 19.7 months compared to 29 months in the Western District of Texas. *See id.* With a 45% lower caseload and drastically shorter time for case resolution, the Western District of Washington will provide a more efficient venue for resolving the dispute. Additional statistics further underscore the point. Second, Washington has a strong interest in the case because the vendor agreement was entered into in Washington, is governed by Washington law, and the related arbitration is pending in Washington pursuant to the Washington venue provision. Third, the Western District of Washington has more familiarity with law that will govern the claims because the vendor agreement provides for Washington law. Fourth, by allowing the Western District of Washington to correctly apply Washington law, the parties and the Courts will avoid unnecessary problems with conflicting applications of state laws.

Because the great weight of both the public and private interest factors heavily favor transfer, this action should be transferred to the Western District of Washington.

## IV. CONCLUSION

For the above reasons, Amazon respectfully requests that the Court dismiss CCI's claims against Amazon for lack of personal jurisdiction, or, in the alternative, transfer this action to the Western District of Washington.

DATED this 13th day of April, 2020.

Respectfully submitted,

By: _____*/s/ John Goldmark*_____
John A. Goldmark, *admitted pro hac vice*
Washington Bar No. 40980
Lauren Rainwater, *admitted pro hac vice*
Washington Bar No. 43625
**DAVIS WRIGHT TREMAINE LLP**
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: (206) 622-3150
Facsimile: (206) 757-7700
Email: johngoldmark@dwt.com
        laurenrainwater@dwt.com

Jonah Jackson
Texas Bar No. 24071450
**THE BENSON FIRM PLLC**
11401 Century Oaks Terrace, Suite 245
Austin, TX  78758
Telephone: (512) 774-6062
Facsimile: (512) 774-6072
Email: jonah.jackson@thebensonfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Matthew K. Davis
Wendy D. Dawer
JONES, DAVIS & JACKSON, PC
15110 Dallas Parkway, Suite 300
Dallas, Texas 75248
Phone: (972) 733-3117
*Attorneys for Plaintiff*

John H. Ray, III
RAY & COUNSEL, P.C.
10044 South Levin Street
Chicago, IL  60643
Phone:  (312) 772-6420
*Attorneys for Defendant Mainspring America, Inc.*

DATED this 13th day of April, 2020.

*/s/ Jonah Jackson*