# EXHIBIT B

**AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| MAINSPRING AMERICA INC., a Wyoming corporation doing business in California; and CAPITAL CREDIT INCORPORATED, a Texas corporation doing business in California,<br><br>    Claimants,<br><br>vs.<br><br>AMAZON.COM SERVICES, INC., a Delaware corporation doing business in California,<br><br>    Respondent. | American Arbitration Association<br>Case No.: 01-18-0004-6123<br><br>Arbitrator:<br><br>**CLAIMANTS' LOCALE CONTENTIONS AND RESPONSE TO RESPONDENT AMAZON.COM SERVICES, INC.'S OBJECTION TO LOCALE** |

Claimants MAINSPRING AMERICA INC. ("MAINSPRING") and CAPITAL CREDIT INCORPORATED ("CCI") (collectively, "Claimants") hereby submit their response to Respondent AMAZON.COM SERVICES, INC.'s ("AMAZON") locale objection as follows:

**INTRODUCTION**

AMAZON's objection to conducting the arbitration in Orange County, California, is misplaced and ignores California law.  A balancing of AAA's factors for determining locale reveals that arbitration is proper and appropriate in Orange County.  In sum, AMAZON does substantial business in Orange County and the State of California and has offices and major worksites in, *inter alia*, Santa Monica, Irvine, Moreno Valley, Rialto, San Francisco, Sunnyvale, Cupertino, Palo Alto, Burlingame and San Diego, California, and currently nine active fulfillment centers in California.

MAINSPRING's principal place of business is in Orange County, the events and injuries described in Claimants' Demand for Arbitration occurred in Orange County, the applicable contract between MAINSPRING and AMAZON was entered into in Orange County, MAINSPRING's products, which are the subject of this action, are stored by AMAZON in warehouses in neighboring San Bernardino and Riverside Counties, and a substantial amount of the acts and omissions giving rise to the causes of action of this Complaint occurred in Orange County. Furthermore, a material and fundamental claim at issue is Respondent AMAZON's violation of California Business & Professions Code section 17200, *et seq.* and other applicable California law, under which the AMAZON choice of law/venue clause is unconscionable and contrary to fundamental California public policy.  Given the immense prejudice that Claimants and other California businesses will suffer if AMAZON is permitted to litigate this matter in King County,

Washington, arbitration should be held in <u>Orange County, California</u>.

## LOCATION OF PARTIES

The first factor AAA considers significant in determining the locale for arbitration is the location of the parties. AMAZON is headquartered in Seattle, Washington but has offices and worksites all over the country, including in Santa Monica, Irvine, and San Diego, all of which are in Southern California. CCI is a Texas corporation, but its operations, personnel and counsel are located in Silicon Valley, California. MAINSPRING is headquartered and located in Irvine, California, and its counsel is located in Costa Mesa, California. Accordingly, Orange County is the most convenient and "middle ground" location for all parties. The factor regarding location of the parties therefore favors Orange County.

## LOCATION OF WITNESSES, DOCUMENTS, AND MATERIALS

The second and third factors contemplate the location of witnesses, documents, materials, and relevant places. Presently, the witnesses identified in this action include MAINSPRING's principals and agents, CCI's representative(s), and AMAZON's representative(s). It is unclear where AMAZON's online representatives are located, as they each communicated with Claimants through the Vendor Portal or over the telephone. However, AMAZON's employees who unpacked, logged, and approved MAINSPRING's shipments for payment are located in their respective warehouse locations within California, including those in Fresno, Rialto, Sacramento, San Bernardino, Tracy, and Moreno Valley, California. Likewise, MAINSPRING's principals reside in Orange County, California. All of the relevant witnesses from CCI are located in Silicon Valley, California.

Most, if not all, documents at issue in this arbitration are accessible online via the Vendor Portal and are accordingly unhelpful in determining locale. A substantial amount of MAINSPRING's inventory, however, is located in Southern California, whereas a fraction of that inventory is located in warehouses in Washington. Accordingly, given the bulk of the inventory in Southern California warehouses and location of witnesses, this factor heavily favors Orange County.

## CONSIDERATION OF COST RELATIVE TO THE PARTIES

The cost of participating in arbitration in Washington is much greater to Claimants, who would be forced to fly representatives from across California, along with counsel in Southern and Northern California, to Seattle, whereas AMAZON's counsel would only have to fly to and from a single location (Seattle to California). Similarly, AMAZON is the largest online retailer in the world; the expense to AMAZON of flying its counsel from Seattle to California is minimal.

Perhaps most importantly, however, AMAZON has previously arbitrated matters in Orange County, California, with Attorney Goldmark appearing via video conferencing. This factor favors Orange County as well.

## PLACE OF PERFORMANCE OF CONTRACT

The Vendor Agreement between MAINSPRING and AMAZON requires that MAINSPRING ship inventory to warehouses in various states, including multiple locations in Southern California, including warehouses in Riverside and San Bernardino Counties, which neighbor Orange County. MAINSPRING has shipped relatively minimal inventory to AMAZON warehouses in the state of Washington. In fact, MAINSPRING presently has eight times as much inventory in California warehouses than in Washington warehouses. MAINSPRING performed its scope of duties and obligations within California, and thus, the place of performance factor favors Orange County.

## LAWS APPLICABLE TO THE CONTRACT

AMAZON argues that locale is proper in King County, Washington because "the dispute is governed by Washington law." (Resp. Answering Statement at 6.) Regardless what the Vendor Agreement states, this conclusion is not foreclosed. AMAZON's choice of law clause is unconscionable and contrary to material and fundamental California law and policy. Instead, California law should apply to this dispute.

California law establishes that where a contract between rational business entities, such as that between AMAZON and MAINSPRING, states that the agreement "shall be interpreted and construed under the laws of [Washington] … the most reasonable interpretation of … [the contract] is that [the parties] intended for the clause to apply to all causes of action arising from or related to their contract." *Nedlloyd Lines B.V. v. Super. Ct. of San Mateo Cnty.*, 3 Cal.4th 459, 469 (Cal. 1992) (interpreting text of an agreement between shipping companies that stated "[t]his agreement shall be governed by and construed in accordance with Hong Kong law") (emphasis added).

Moreover, CCI is *not a party* to the contract between Mainspring and AMAZON, and thus *not subject to AMAZON's "terms and conditions" including the venue provision.* CCI's claims relate solely to its rights as the secured lender to MAINSPRING and those associated rights to both its Collateral (Mainspring's product) now in AMAZON's possession, largely in Southern California warehouses, and the proceeds of Collateral sold by AMAZON, which AMAZON refuses to pay to CCI.

Nevertheless, even if the Vendor Agreement's choice of law provision ostensibly pertains to this dispute, California law still renders that provision inapplicable in appropriate circumstances,

such as that herein. California law adheres to the Restatement approach regarding choice of law provisions: "The law of the state chosen by the parties to govern their contractual rights and duties will be applied … unless either (a) **the chosen state has no substantial relationship to the parties or the transaction** …, or (b) **application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issues** … and would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement (Second) Conflict of Laws § 187(2) (1971) (emphasis added); *Nedlloyd*, *supra*, 3 Cal.4th at 464 (California follows the modern approach of section 187 of the Restatement Second of Conflict of Laws).

As the tribunal should do here, courts have not hesitated to void choice of law provisions in deference to state policy interests. *See, e.g.*, *Wright-Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 132 (7th Cir. 1990); *Hirschkon v. Principal Life Ins. Co.*, 141 F. Supp. 3d 1028 (N.D. Cal. 2015). As set forth in greater detail herein, the only connection the state of Washington has to this dispute is that AMAZON is headquartered in Seattle, and AMAZON's unilateral "terms and conditions" for sales on its site which contains a Washington venue provision, whereas each party's connections to California are extensive and far more compelling.

Among Claimants' many California state law claims against AMAZON, perhaps the most crucial is the claim for violation of California Business & Professions Code § 17200, *et seq*., also known as the Unfair Competition Law ("UCL"). The UCL aims to foster and encourage competition by prohibiting unfair, dishonest, destructive, fraudulent, and discriminatory practices. *See, e.g.*, *Cel-Tech Comm. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163 (1999); *Stoiber v. Honeychuck*, 101 Cal. App. 3d 903 (1980) (the Act reflects a clear design to protect consumers and competitors from unlawful, unfair, or fraudulent business practices). California's unfair business practices statute is one of the most protective of all its counterparts. *See, e.g.*, Cal. Bus. & Prof. Code § 20010 ("Any condition, stipulation or provision purporting to bind any person to waive compliance with any provision of the law is contrary to public policy and void."). (*See, e.g.*, Claimants' Second and Sixth Causes of Action.) It is paradoxical to suggest that *Washington law* could correctly interpret or award a judgment under *California's UCL*. To deny Claimants the benefits of the UCL would strip away important legislatively-imposed protections and would necessarily contravene a fundamental public policy of the State of California.

Furthermore, California has a materially greater interest in the instant dispute than does Washington. Hundreds of thousands of dollars of MAINSPRING product is still held in AMAZON

warehouses in California; the dispute involves more than a million dollars of product delivered to warehouses within California; MAINSPRING is a California business; and AMAZON caters to millions of California consumers who rely on the enforcement of fair business practices. The State of Washington's only interest in the dispute is that AMAZON is headquartered in Seattle. This lone factor is not enough to overcome public policy in the State of California.

### PLACE OF PREVIOUS COURT ACTIONS

MAINSPRING did not file any actions against AMAZON in state or federal court, as it was willing to accept the arbitration provisions. AMAZON demands enforcement of the arbitration provision pursuant to its various Terms and Conditions. Historically, however, AMAZON has arbitrated matters in Orange County, California, with Attorney Goldmark appearing via video conferencing. Orange County is again the correct venue under this seventh factor.

### NECESSITY OF AN ON-SITE INSPECTION

Because a great deal of MAINSPRING's inventory is held in warehouses in California, the need to conduct an on-site inspection to determine the actual amount of inventory AMAZON claims it is holding or is unable to dispose of is great. AMAZON's primary claim is that it received and is now burdened with excessive inventory and, as a result, has incurred hundreds of thousands of dollars to store that inventory. Accordingly, the parties will likely need to conduct an accounting and take stock of inventory at MAINSPRING's products, a substantial amount of which is currently held in California warehouses including Eastvale, Fresno, Sacramento, San Bernardino, and Tracy. As stated above, California warehouses presently hold eight times the amount of inventory than Washington warehouses. The eighth factor therefore favors Orange County.

### OTHER ARGUMENTS

AMAZON asserts that Orange County is not a suitable location for arbitration because "arbitration <u>must</u> be conducted in King County, Washington." (Resp. Answering Statement at 6, emphasis added.) However, the Vendor Agreement does not, in fact, <u>require</u> that arbitration be held in King County, Washington. It actually permits arbitration at "another mutually agreed location."

AMAZON refuses to negotiate on this point and asserts it will *only* agree to arbitration in King County, Washington. As stated above, this position is draconian, fundamentally unfair under California public policy, and relies entirely on boilerplate contractual provisions. Retail giant or not, AMAZON's iron fist and draconian terms and conditions do not trump materially pertinent California law and public policy. California has a materially greater interest in the outcome of this dispute than Washington, thus arbitration is appropriate in Orange County, California.

Dated:  April 1, 2019				**SIDDIQUI LAW, APC**

						By:  ___*/s/ Kathrynn F. Benson /*_____
						       **OMAR A. SIDDIQUI, ESQ.**
						       **KATHRYNN F. BENSON, ESQ.**
						       Attorneys for Claimant,
						       **MAINSPRING AMERICA INC.**

						**AMBROSI & DOERGES, APC**

						**By:**  __*/s/ E. Michael Ambrosi /*_____
						       **E. MICHAEL AMBROSI, ESQ.**
						       Attorneys for Claimant,
						       **MAINSPRING AMERICA INC.**

						 **PAHL & MCCAY**

						By:  ___*/s/ Catherine Schlomann Robertson /*
						       **CATHERINE SCHLOMANN**
						       **ROBERTSON, ESQ.**
						       Attorneys for Claimant,
						       **CAPITAL CREDIT INCORPORATED**

**CLAIMANTS' LOCALE CONTENTIONS AND RESPONSE TO RESPONDENT'S OBJECTION TO LOCALE**