**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **CAPITAL CREDIT INCORPORATED,** | § | |
| | § | |
| **V.** | § | **A-19-CV-797-LY** |
| | § | |
| | § | |
| **MAINSPRING AMERICA, INC. and** | § | |
| **AMAZON.COM SERVICES, INC.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant Amazon.com Services, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer Venue (Dkt. No. 30); Defendant Mainspring America, Inc.'s Response[1] (Dkt. No. 32); Plaintiff's Opposition (Dkt. No. 33); and Amazon's Reply (Dkt. No. 35). The District Judge referred the above-motions to the undersigned for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B), FED. R. CIV. P. 72, and Rule 1(d) of Appendix C of the Local Court Rules.

## I.  GENERAL BACKGROUND

Mainspring America, Inc. distributes cosmetics and skincare products, and offers its product lines directly to retailers such as Defendant Amazon.com Services, Inc., via bulk shipments. Mainspring entered into a credit agreement with Capital Credit Inc., secured by an interest in Mainspring's property, which is its inventory. In December 2017, Amazon stopped placing future orders with Mainspring. Mainspring continued to ship products to Amazon into 2018, which

---

[1] Defendant Mainspring takes "no position" on Defendant Amazon's Motion.

Amazon received, and for which Amazon continued to approve invoices for payment. In April 2018, Amazon froze all payments to Mainspring.

In December 2018, CCI and Mainspring joined as co-plaintiffs to file a complaint against Amazon in arbitration in California. Mainspring and CCI asserted joint claims and both signed the complaint. Their claims rest on the allegation that Mainspring and Amazon entered into a vendor contract under which Amazon purportedly owes Mainspring payment for the allegedly shipped products. CCI's claims derived from its status as Mainspring's creditor, and its related security interest in Mainspring's accounts receivable.

The three parties to the arbitration disputed the proper locale for the proceedings, the applicable law, and whether CCI and Mainspring could consolidate their claims in a joint arbitration proceeding against Amazon. Basing its findings on the vendor contract between Mainspring and Amazon, the arbitrator ruled that: (1) Washington law governs the dispute; (2) King County, Washington, is the proper locale for the arbitration; and (3) CCI could not pursue consolidated claims with Mainspring. The arbitrator dismissed CCI from the arbitration. CCI then filed suit in Texas state court, naming Amazon and its former co-plaintiff Mainspring as defendants. Defendant Amazon then removed the case to federal court.[2]

Defendant Amazon moves to dismiss this action asserting the Court lacks personal jurisdiction over Amazon because it is a Washington company incorporated in Delaware. Alternatively, Amazon moves to transfer the case to the Western District of Washington under 28 U.S.C. § 1404(a) "[f]or the

---

[2] In its petition, CCI alleged that Mainspring is a Wyoming corporation with its principal place of business in California, Amazon is a Delaware corporation with its principal place of business in Washington, and that CCI is a citizen of Texas.

convenience of parties and witnesses." For the reasons set forth below, the Court concludes that Amazon.com Services, Inc. should be dismissed from this case for lack of personal jurisdiction.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. The plaintiff has the burden of establishing jurisdiction. *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016). If, as here, the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a prima facie case of personal jurisdiction. *Id.* "Proof by a preponderance of the evidence is not required." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (quoting *Johnson v. Multidata Sys. Int'l Corp*. 523 F.3d 602, 609 (5th Cir. 2008)). In determining whether the plaintiff has presented a prima facie case of personal jurisdiction, the court "must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Patterson*, 826 F.3d at 233.

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant if the state's long-arm statute permits an exercise of jurisdiction over that defendant and an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018); *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Because the requirements of the Texas long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether this court's exercise of personal jurisdiction over the defendant would be consistent with due process. *Sangha*, 882 F.3d at 101. In order for personal jurisdiction to satisfy due

process requirements, a plaintiff must show that: (1) the defendant purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of "fair play and substantial justice." *Int'l Shoe Co. v. Wash*., 326 U.S. 310, 316 (1945).

A defendant's "minimum contacts" may give rise to either specific or general personal jurisdiction, depending on the nature of the suit and the defendant's relationship to the forum state. *Sangha*, 882 F.3d at 101. For minimum contacts to exist, "a defendant must have purposefully availed himself of the benefits and protections of the forum state such that he should reasonably anticipate being haled into court there." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (citation omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)). "That requirement is the 'constitutional touchstone' of personal jurisdiction. It 'ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person.' " *Id.* at 193-94. The plaintiff cannot supply "the only link between the defendant and the forum. Rather, jurisdiction is proper only where the defendant himself made deliberate contact with the forum." *Id.* at 194 (quotations omitted). Thus, for specific jurisdiction to exist the nonresident defendant must have "purposefully directed its activities at the forum state," and the litigation must "result[ ] from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (internal quotation marks omitted).

On the other hand, a court may assert general jurisdiction over non-resident defendants "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.*" Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915,

4

919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). For general jurisdiction purposes, a corporation is "essentially at home" where it is incorporated and has its principal place of business. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014)). However, in an "exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG*, 571 U.S. at 139. Such an exceptional case is where the forum state is the center of the corporation's activities, even if the corporation's place of incorporation and principal place of business are elsewhere. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (holding train company with over 2,000 miles of track and more than 2,000 employees in Montana was insufficient to establish general jurisdiction) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952)). Transacting business in the forum state does not by itself give rise to general jurisdiction. *Id.* (quoting *Daimler AG*, 571 U.S. at 139 n.20).

## III.   ANALYSIS

### A.   General Jurisdiction

CCI bears the burden of establishing jurisdiction. CCI asserts that this Court has general jurisdiction over Amazon based upon it's "pervasive presence in the State of Texas" with the sheer size of the corporation and the large number of Amazon fulfillment centers and employees in Texas. Amazon responds that it is a Washington-based company, incorporated in Delaware, and cannot be considered "at home" in Texas. Dkt. No. 1-4 at ¶ 5. The Court agrees.

For general jurisdiction purposes, a corporation is "essentially at home" where it is incorporated and has its principal place of business. *Monkton,* 768 F.3d at 432. Texas is neither

Amazon's state of incorporation nor the site of its principal place of business, nor is it the center of Amazon's activities. The exceptional case identified in *BNSF* does not apply here. 137 S. Ct. at 1558. CCI does not allege, or produce any evidence showing, Texas is the center of Amazon's activities. Defendant Amazon.com Services, Inc., is not subject to general jurisdiction in Texas simply because it does business here—Amazon does business "everywhere" as CCI recognizes in its briefing. Dkt. No. 33. at 9. "A corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 571 U.S. at 139 n.20. This basis of general jurisdiction fails.

Unable to point to caselaw supporting its argument that Amazon is "at home" in Texas, CCI attempts to distinguish *Daimler*, asserting it "involved a fantastic set of facts" differing greatly from the instant suit. Dkt. No. 33 at 10. Additionally, CCI asserts that the *Daimler* Court based its conclusion that there was no general jurisdiction on the fact that the "foreign plaintiffs [have] nothing to do with anything that occurred or had its principal impact in California." Dkt. No. 33 at 10. CCI asserts that in this case, CCI is a Texas corporation, and the impact of Amazon's actions are felt in Texas. The Fifth Circuit has interpreted *Daimler* and *Goodyear* to mean that "[i]t is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs.*, 768 F.3d at 432. The Fifth Circuit's holding is based upon and not undermined by the facts in *Daimler*. *Id.* at 429; *Patterson v. Aker Solutions, Inc.*, 826 F.3d 231 (5th Cir. 2016). Moreover, the argument that the holding in *Daimler* was based upon the fact that the plaintiffs in that case had no contact with California is incorrect. The entire quotation reads:

> It was therefore error for the Ninth Circuit to conclude that Daimler, even with MBUSA's contacts attributed to it, was at home in California, and hence subject to

6

suit there on claims by foreign plaintiffs having nothing to do with anything that occurred or had its principal impact in California.

*Daimler*, 571 U.S. 117, 139 (2014). CCI took the language it quotes out of context, as the *Daimler* court specifically assessed ***Daimler's*** contacts with California in the context of analyzing whether it was "at home" in the forum for purposes of general personal jurisdiction and not the Plaintiffs' contacts with California.

CCI makes the additional argument that Amazon entities have been involved in a number of lawsuits in the United States District Court for the Western District of Texas. It points out that Amazon.com Services, Inc., has been involved in four other lawsuits in the Western District of Texas, and in at least one it submitted to the Court's jurisdiction. *See Native Hostel Austin, LLC. v. Amazon Corporate, LLC, Amazon Fulfillment Services, Inc., Amazon.com Services, Inc,. and Wells Fargo Bank, N.A.*, No. 1:18-CV-524 (W.D. Tex. 2018).  CCI asks the Court to take judicial notice of the *Native Hostel* case. Amazon responds to this argument by pointing out that in *Native Hostel*, Amazon did not dispute the existence of specific jurisdiction, because the dispute involved the use of property located in Austin, Texas, under an agreement entered into by "Amazon Corporate, LLC." This factual distinction is significant, as there is no such specific connection here.

CCI has failed to carry its burden to establish a prima facie case that this Court has general personal jurisdiction over Amazon.com Services, Inc.

**B.     Specific Jurisdiction**

CCI also asserts that the Court has specific jurisdiction over Amazon.com Services, Inc., alleging CCI was injured in Texas by Amazon's actions. Amazon responds that CCI has failed to identify any suit-related conduct on its part directed at Texas.

7

Whether specific jurisdiction can be properly asserted over a nonresident defendant is dependent on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). For the exercise of specific jurisdiction to comply with due process, "the suit must arise out of or relate to the defendant's contacts with the forum." *Zoch v. Magna Seating (Germany) GmbH*, 2020 WL 1951482, at *3 (5th Cir. Apr. 22, 2020) (citing *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F.*, 137 S. Ct. 1773, 1780 (2017)). The Fifth Circuit has articulated a three-step analysis for the specific jurisdiction inquiry:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;

> (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and

> (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona,* 924 F.3d at 193. If the plaintiff satisfies the first two prongs, the burden then shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable. *Id.* The Court finds that CCI has failed to establish the first two prongs of the inquiry.

To support its specific jurisdiction argument, CCI relies upon its Agreement with Mainspring in which it purchased Mainspring's accounts receivable, and Amazon's receipt of notice that Mainspring granted CCL a secured interest in its accounts receivable.  The Agreement between CCI and Mainspring includes a venue provision in Travis County, Texas.

That Agreement reads:

13.15. Governing Law; Jurisdiction; Venue. This Agreement and all acts and transaction hereunder and thereunder and all rights and obligations of the Buyer and Seller shall be governed, construed and interpreted in accordance with the internal laws of the State of Texas. Seller (i) agrees that all actions or proceedings relating

> directly or indirectly [sic] this Agreement or any of the Obligations shall, at the sole option of Buyer, be litigated in courts located within said state, and that, at the sole option of Buyer, the exclusive venue therefore shall be Travis County, Texas; (ii) consents to the jurisdiction and venue of any such court and consents to service of process in such action or proceeding by personal delivery or any other method permitted by law; and (iii) waives any and all rights Seller may have to object to the jurisdiction of such court, or to transfer for change the venue of any such action or proceeding.

Dkt. No. 1-5 at 8, ¶ 17. CCI maintains that subject to this Agreement, Mainspring issued invoices to Amazon, and then specifically assigned payment of those invoices, in writing, to CCI and obtained an advance from CCI. Dkt. No. 1-5 at 8, ¶ 19. CCI asserts that on April 20, 2015, "Defendant Amazon was issued written notice of Defendant Mainspring's assignment of its invoices to CCI." Dkt. No. 33 at 4. CCI argues that this notice instructed Amazon to make all payments on Mainspring's invoices to CCI—if by check, to CCI in Dallas, Texas and if by EFT to CCI's bank account at Heritage Bank of Commerce. Dkt. No. 1-5 at 34 (notice attached to state court petition).

Relying on its state court pleadings, CCI additionally asserts that on May 10, 2017, Mainspring uploaded the assignment notice to the Amazon Vendor Portal. On May 11, 2017, Amazon purportedly contacted Mainspring via that portal to confirm that Mainspring had updated its banking details, which Mainspring confirmed to Amazon. Dkt. No. 1-5 at 9, ¶ 21. Additionally, Amazon contacted CCI via email regarding the payment status of the account. Dkt. No. 33-1 at 21. CCI relies on these actions by Amazon as the basis for specific jurisdiction, asserting that "these crucial facts unequivocally show that Defendant Amazon purposely directed its activities at CCI, a Texas corporation." Dkt. No. 33 at 11.

Amazon asserts that none of these facts demonstrate that Amazon took suit-related activity directed at Texas. It contends that the only two conceivably suit-related contacts Amazon had with

Texas that CCI has identified are: (1) Amazon payments possibly sent to Texas; and (2) Amazon's alleged "ratification" of the Agreement between Mainspring and CCI. Amazon argues that neither of these arguments hold up.

On the payment issue, Amazon argues that CCI fails to allege or offer any proof that Amazon ever actually sent a payment to Texas. It notes that the Notice of Assignment provided for payment by check to a Texas address or payment by wire transfer to CCI's bank account in Santa Clara, California. Dkt. No. 1-5 at 34. Additionally, Amazon points out that CCI has failed to offer proof that Amazon entered into any agreement with CCI directly regarding the payments. Lastly, Amazon argues that even if it did send a payment to Texas, this is an insufficient basis for jurisdiction. Amazon is correct on each of these points. "A defendant who merely agrees to send payments to a state has not purposefully availed itself of the privilege of conducting business within that state or invoked the benefits and protections of that state's laws." *Gulf Coast Bank & Tr. Co. v. Designed Conveyor Sys., L.L.C.*, 717 F. App'x 394, 399 (5th Cir. 2017). Indeed, the Fifth Circuit

> has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant.

*Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (emphasis added) (collecting cases). Amazon's activities related to payments, even if substantiated by evidence that it made a payment in Texas—which has not occurred— is insufficient to qualify as purposeful action directed to Texas or an action related to CCI's injury.

With regard to ratification, Amazon asserts that the only contract it entered into was with Wyoming-based Mainspring, and it is not party to CCI's agreement with Mainspring. It is well-

10

settled that in a breach of contract case, a "plaintiff's or third party's unilateral activities cannot establish minimum contacts between the defendant and forum state. . . ." *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). Instead, a nonresident defendant establishes "[minimum] contact[s] with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state." *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 382 n.6 (5th Cir. 2003) (citing *Mississippi Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1007 (5th Cir. 1982)). Amazon took no affirmative action in this case and made no efforts to cause business activity in Texas, it was merely notified by Mainspring that money Mainspring was due from Amazon should instead be sent to CCI.

Conspicuously, CCI cites no caselaw supporting the contention that Amazon "ratifying" the CCI/Mainspring contract is relevant to the specific jurisdiction analysis. Rather, the case law suggests the contrary—that the Agreement between CCI and Mainspring does not bear on Amazon's contacts with Texas. *See Halliburton,* 921 F.3d at 543; *Allied Prof'ls Ins. Co. v. Harmon*, 2017 WL 5634861, at *4 (C.D. Cal. Mar. 7, 2017) ("the contacts of a contracting party are not imputed to an assignee or third-party beneficiary under a minimum contacts analysis")). Mainspring's contractual assignment to CCI is not a sufficient basis for this Court's jurisdiction over Amazon.

The Court finds that CCI's claims against Amazon do not arise or result from Amazon's forum-related contacts. Because CCI has failed to carry its burden as to the first two prongs of the Fifth Circuit's specific jurisdiction analysis, the Court need not address whether the assertion of jurisdiction is fair or reasonable. The Court finds that it does not have specific jurisdiction over

11

Amazon.com Services, Inc., and the claims against it should be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction.[3]

## IV. RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT IN PART** Defendant Amazon.com Services, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer Venue (Dkt. No. 30) and dismiss CCI's claims against Amazon.comServices, Inc. without prejudice for lack of personal jurisdiction. **IT IS FURTHER ORDERED** that this cause of action is **REMOVED** from the docket of the undersigned and **RETURNED** to the docket of the Honorable Lee Yeakel.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C);

---

[3]Because the Court has determined the case should be dismissed for lack of personal jurisdiction, the Court does not address Amazon's alternative motion to transfer venue.

*Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415,

1428–29 (5th Cir. 1996) (en banc).

SIGNED this 17th day of July, 2020.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE